# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

**EMMANUEL LEWIS WALKER,**

> **Plaintiff,**

v.                                                    **Case No. 3:12cv212/MCR/CJK**

**STATE OF FLORIDA, DEPARTMENT
OF CORRECTIONS, et al.,**

> **Defendants.**

_____/

## REPORT AND RECOMMENDATION

The plaintiff, Emmanuel Lewis Walker, filed this lawsuit against the defendant, Florida Department of Corrections, asserting claims for disability discrimination under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, and Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"). Pending before the court is the defendant's motion for summary judgment (doc. 48), which the plaintiff opposes (doc. 64).[1] Having considered the motion and response, as well as the evidentiary materials submitted in support thereof, the court finds that the motion should be granted.

---

[1] In his complaint, the plaintiff named Kenneth Tucker, Secretary of the Florida Department of Corrections, as a defendant. In response to the defendants' motion, the plaintiff stipulated to the dismissal of Tucker. *See* doc. 64.

## BACKGROUND

This matter stems from the plaintiff's incarceration at the Pensacola Work Release Center ("PWRC"). The plaintiff, who was born with no lower legs and at least at times uses prosthetics, claims he is disabled and suffered discrimination by the defendants during his five-month stay at PWRC. Specifically, the plaintiff complains that he was not provided a handicapped restroom or restroom facilities, did not have access to the cafeteria, was unable to use ramps because they were too steep, and was denied the opportunity to apply for jobs. The defendant seeks summary judgment as to the plaintiff's claims, arguing that he is not disabled within the meaning of the ADA or Rehabilitation Act and, in any event, was provided reasonable accommodations. In support of its motion, the defendant relies largely on the deposition testimony of the plaintiff and Major John Frank Kolodziej, Chief Security Officer at PWRC during the majority of the time the plaintiff was incarcerated there, which it contends demonstrates there is no genuine issue as to any material fact. In his two-page response to the defendant's motion, the plaintiff stipulates to the undisputed facts offered by the defendant, including that the defendant was "proactive in [its] responses to Plaintiff's concerns about accommodations," and offers four additional statements of fact, at least one of which contradicts the facts as to which he stipulated. Although the plaintiff cited to deposition testimony in support of his response, most of the testimony to which he cited was neither attached to his response nor appears anywhere in the record.

## DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56(a) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law, and it is "genuine" if the record taken as a whole could lead a rational fact finder to find for the non-moving party. *Id.* Summary judgment is not appropriate "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995). When assessing the sufficiency of the evidence, the court must view all the evidence, and all factual inferences reasonably drawn therefrom, in the light most favorable to the nonmoving party. *See Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993). A mere scintilla of evidence in support of the nonmoving party's position will not suffice to demonstrate a genuine issue of material fact and thereby preclude summary judgment. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). Moreover, "the nonmoving party cannot create a genuine issue of material fact through speculation, conjecture, or evidence that is 'merely colorable' or 'not significantly probative.'" *Vega v. Invsco Group, Ltd.*, 432 Fed. Appx. 867, 869-70 (11th Cir. 2011).

B.    Plaintiff's Claims

Pursuant to Title II of the ADA, a "'qualified individual with a disability' cannot be excluded from participating in, or be denied the benefits of, services, programs, or activities of a public entity 'by reason of such disability' or 'be subjected to discrimination' by the public entity."[2]  *Flournoy v. Culver*, 534 Fed. Appx. 848, 851 (11th Cir. 2013).  A public entity also is required to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity."  28 C.F.R. § 35.130(b)(7).  "The Supreme Court has instructed that a disabled prisoner can state a Title II ADA claim if he is denied participation in an activity provided in state prison by reason of his disability."  *Flournoy*, 534 Fed. Appx. at 851-52.  Thus, "[f]ailure to provide a reasonable accommodation – or 'reasonable modification' as the statute puts it – to services, programs, or activities for a disabled inmate may constitute discrimination in violation of Title II."  *Kramer v. Conway*, No. 1:13cv1214WSD, 2013 WL 4505592, at *12 (N.D. Ga. Aug. 23, 2013).

In order to state a claim under Title II of the ADA, a plaintiff must allege the following: "(1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or . . . denied the benefits of the services, programs, or activities of a public entity or otherwise discriminated [against] by such entity; (3) by reason of such disability."  *Badillo v. Thorpe*, 158 Fed. Appx. 208, 214

---

[2] As the Eleventh Circuit has observed, Section 504 of the Rehabilitation Act contains nearly identical language.  *See, e.g., Greer v. Richardson Indep. Sch. Dist.*, 472 Fed. Appx. 287, 291 fn.1 (11th Cir. 2012).  The court therefore will consider the plaintiff's claims under both statutes but, at times, will refer only to the ADA.  *Id.*

(11th Cir. 2005) (internal marks omitted). "In order to recover compensatory damages . . . , a plaintiff must demonstrate intentional discrimination or bad faith."[3] *Id.* (internal marks omitted). "In other words, good faith attempts to pursue legitimate ends are not sufficient to support an award of compensatory damages under [the ADA or Rehabilitation Act]." *Id.* (internal marks omitted).

Here, assuming the plaintiff was a qualified individual with a disability, he has failed to make a *prima facie* case under the ADA because he has presented no evidence of discrimination, much less intentional discrimination or bad faith. To the contrary, the evidence shows that PWRC made every accommodation requested by the plaintiff and more. Kolodziej testified at his deposition that, prior to the plaintiff's arrival at PWRC, the plaintiff met with the safety sergeant at Century Correctional Institution, where he was housed before being transferred to PWRC, to discuss any accommodations he might need at PWRC. The plaintiff advised the sergeant that he needed a wheelchair, a slide board, and a shower chair. PWRC obtained each of the items requested by the plaintiff prior to the plaintiff's arrival. In fact, the plaintiff's transfer was delayed while the items were obtained. Major Kolodziej also testified that he was particularly sensitive to the plaintiff's condition because his father was a double amputee. According to Kolodziej, he "took a personal interest in [the plaintiff's] case" and "understood some of the mobility issues and issues that he would have . . . ."

---

[3] In setting forth the standard for recovering compensatory damages in *Badillo*, the Eleventh Circuit expressly referred only to the Rehabilitation Act. It noted, however, that "[w]ith the exception of its federal funding requirement, the [Rehabilitation Act] uses the same standards as the ADA, and therefore, cases interpreting either are applicable and interchangeable." *Id.* The court then applied the same compensatory damages standard to the plaintiff's Rehabilitation Act and ADA claims. Other courts have done the same. *See, e.g., J.D.P. v. Cherokee Cnty, Ga. Sch. Dist.*, 735 F. Supp. 2d 1348, 1364 (N.D. Ga. 2010); *Merker v. Miami-Dade Cnty. Fla.*, 485 F. Supp. 2d 1349, 1356 (S.D. Fla. 2007).

Approximately one month after the plaintiff arrived at PWRC, he complained of difficulty using the restroom facilities. In order to further accommodate the plaintiff, PWRC renovated a restroom to allow easier wheelchair access. Specifically, PWRC enlarged the restroom, adjusted the sink height, installed grab bars around the toilet and in the shower, and installed a ramp to the shower. It also widened the door to the plaintiff's room. Until the renovations could be completed, the plaintiff was relocated to another, more suitable room that was in close proximity to a restroom. No modifications were made to the cafeteria entrance. Kolodziej testified, however, that the entrance had double doors, allowing for wheelchair access. And the plaintiff both stipulated to and admitted that fact, testifying that he was able to enter and exit the cafeteria, albeit with some difficulty.

Kolodziej's testimony is consistent with an email the defendant attached as an exhibit to its motion.[4] In the email, Kolodziej advised the plaintiff's fiancee, who had sent the warden an email regarding the plaintiff, that he had taken "somewhat of a personal interest in [the plaintiff] and his needs." Kolodziej stated that he had "spoken to [the plaintiff] on several occasions concerning the conditions, accessibility, and his needs at [PWRC]" and that the plaintiff had advised him that "his only unmet need [was] the restroom facility." Kolodziej explained that the facility had "made accommodations to this point, by relocating [the plaintiff's] housing and restroom assignment to a more suitable location" and that, although the plaintiff recently indicated that he "was still having some issues with the restroom," he "also stated that he was able to safely work with them until a retro fit could be completed." Kolodziej advised that PWRC had "drafted a design for the retrofitting of the restroom to better accommodate his needs" and

---

[4] Although arguably hearsay, the plaintiff did not object to or otherwise address the email.

that the retrofitting was scheduled to begin early the following week. According to Kolodziej, PWRC had "taken other steps to accommodate Inmate Walker's needs by providing specialized equipment for the bath and transportation needs that he requires at the State's expense." Finally, Kolodziej informed the plaintiff's fiancee that the plaintiff had been "afforded the opportunity to return to Century until the necessary retro fit project was completed" but "refused this stating that he had adapted to the conditions."

As for the plaintiff's remaining allegations, there is no evidence that the plaintiff was unable to use the ramps at PWRC or that the ramps were defective in any way. Likewise, the record does not reflect – or even support an inference – that the plaintiff ever complained to anyone at PWRC about the ramps or requested any modification or accommodation in that regard. Under both the ADA and the Rehabilitation Act, the defendant's duty to provide a reasonable accommodation is not triggered until the plaintiff makes a request for an accommodation. *See, e.g., U.S. v. Hialeah Housing Auth.*, 418 Fed. Appx. 872, 876 (11th Cir. 2011); *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363-64 (11th Cir. 1999). In other words, "[t]he duty to make a reasonable accommodation does not simply spring from the fact that the handicapped person wants such an accommodation made. Defendants must instead have . . . the ability to conduct a meaningful review of the requested accommodation . . . ." *Hialeah Housing Auth.*, 418 Fed. Appx. at 876; *see also Gaston*, 167 F.3d at 1364 (noting that, pursuant to Eleventh Circuit precedent and the EEOC's interpretive guidelines, "the initial burden of requesting an accommodation is on the [plaintiff]. Only after the [plaintiff] has satisfied this burden and the [defendant] fails to provide that accommodation can the [plaintiff] prevail on a claim that [the defendant] has discriminated against

[him].").  Nevertheless, PWRC installed an additional ramp to make the outdoor telephones more accessible to the plaintiff.

Finally, although the plaintiff alleges in his complaint that he was not allowed the same opportunity to interview for jobs as other inmates at PWRC, he did not address that allegation in response to the defendant's motion other than to admit that the employment counselors at PWRC obtained an interview for him at McDonald's and that he was hired as a cashier at the drive-through window.[5] Because he failed to press the claim at the summary judgment stage, the court deems it abandoned.  *See, e.g., Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (holding that "the onus is upon the parties to formulate arguments; grounds alleged  in the complaint but not relied upon in summary judgment are deemed abandoned").

CONCLUSION

For the reasons set forth above, it is respectfully RECOMMENDED:

1.  That the defendant's motion for summary judgment (doc. 48) be granted and that the Clerk of Court be directed to enter final summary judgment in favor of the defendant, consistent with this order, and tax costs against the plaintiff.

At Pensacola, Florida, this 12th day of February, 2014.

/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[5] According to the evidence of record, the plaintiff interviewed with at least four potential employers and was working at McDonald's at the time of his release from incarceration.  He was terminated approximately a month after his release because there had been too many instances in which the cash register drawer at which he was working did not balance at the end of his shift.

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).